debts were fully paid, and surplus examined. The assignment charges the legal estate and operates as a severance. The execution issued on the judgment has the same effect. If Dougherty had died immediately afterwards, a *venditioni exponas* might have been taken out and the lands sold forthwith, without any *scire facias*. On both points, therefore, I am of opinion with the plaintiff.

<div align="right">Verdict <i>pro quer.</i></div>

---

Lessee of RICHARD NEAVE, sen., and RICHARD NEAVE, jun., *against* JONATHAN EDWARDS and GEORGE WEISGARVER.

<div style="font-size:smaller">
An improvement abandoned, gives no claim; but when made <i>bona fide</i> and duly followed up, will be preferred to a general indescriptive warrant, without a survey.
</div>

EJECTMENT for one messuage, 6 acres of meadow, 20 acres of arable land, and 145 acres of woodland, in Bedford township.

The plaintiff claimed under a warrant to James Caldwell, for 400 acres in the forks of Dunning's creek, including his improvement, in Cumberland County, dated 31st May 1763 ; a survey thereon of 850 acres and allowance by Richard Tea, on the 16th May 1765, and sundry mesne conveyance. It being afterwards discovered, that the survey included patented lands held under an elder right, a warrant of re-survey was obtained, upon which a re-survey was made by George Woods, on the 3d May 1776, containing 586 acres and 125 perches excluding the patented lands, but including the defendant's house and claim, which were also comprehended within the lines of the original survey.

The defendants produced witnesses, who swore, that in August 1762, one Robert Owings made improvements on the land, by building a small cabin, clearing a field of near two acres, inclosed with a brush fence, and planting corn therein. In the spring following the settlers were driven off by the Indians. Owings left the place amongst the rest, and never returned.

In 1776, Robert Adams, jun. understanding that Owings had relinquished all claim, came to the old improvement and cleared a small spot for hemp-seed. In the succeeding year he raised another small cabin, and was then driven off by the Indians. Weisgarver lived about three miles distant, and took possession, but not claiming under Owings. About 1783, he applied to Adams to purchase his improvement.

The plaintiff's counsel offered to prove, that Owings had entirely given up his claim before the survey 1765, but were stopped by the court, who said there was already given full and satisfactory evidence of an abandonment. Owings quitted his cabin in 1763, and never returned nor claimed the land. Under a warrant like the present, not precisely descriptive of particular lands, and when there was much vacant land in the forks of Dunning's creek, a fair *bona fide* settlement made before the survey, and continued from time to time, unless interrupted by the enemy, would be entitled to the preference. Here no less than 850 acres were surveyed under a 400 acres warrant, But circumstanced as this case is, the plaintiff's title must necessarily prevail.

Verdict *pro quer. instanter.*

Messrs. Hamilton, Duncan and Woods, *pro quer.*

Messrs. Brown and Riddle, *pro def.*

---

AT NISI PRIUS, AT READING, SEPTEMBER ASSIZES, 1799.

CORAM, YEATES AND SMITH, JUSTICES.

JOHN LUDWICK assignee of JACOB BOLLINGER, *against* MICHAEL CROLL.

One having a good defence against his bond, promises [to pay it, and thereby induces a person to procure the assignment thereof, he shall be concluded aliter, where ignorant of his defence, he acknowledges his liability, after the assignment.

DEBT 550*l.* Plea, payment, with leave to give the special matter in evidence. Replication *non solvit* and issue.

The facts on the trial appears as follow :

Bollinger, an inhabitant of North Carolina, an adventure of slender property, claimed a right to 1,152 000 acres of land in Powel's Valley in the state of Kentucky, under a pretended survey made on the 18th June 1795. This survey, on the face of it, bore the plainest marks of a forgery, and was admitted to be such by the plaintiff's counsel. On the 8th June 1796, he conveyed these lands to the defendant and four others, in consideration of one cent per acre ; and the defendant paid him 200*l.* in goods, and gave him two bonds conditioned for the payment of 275*l.* each, by instalments.

One of these bonds had been assigned to one Eckenwelder, whom the defendant had satisfied. The other formed the subject of controversy, and had been assigned to the plaintiff on the 24th June following. No part