Fletcher owed Campbell $5,000, and on the day the note-fell due Campbell applied for payment; Fletcher [398] agreed to pay in negotiable notes payable in bank, due at a future day, amongst others, one on E. Talbot, for $ 1,600, which had three months to run ; this note had been given for a debt due from Talbot to Fletcher. Campbell agreed to take it at a discount of three or four per cent per month for the time it had to run, provided Fletcher would give additional-indorsers, to secure the debt when due ; Fletcher indorsed the note himself, and gave Read and Gray as the additional security required. When the note fell due it was not paid, and Campbell sued Read and Gray.
Suppose Talbot had made the note to Read and Gray, who had sold it at a discount over legal interest to Campbell, could the latter recover from Read and Gray ? or would the transaction between them be usurious ? The note was genuine, and given in the fair course of trade. The indorsement was the making of a new note, and as a contract was collateral to and independent of the note indorsed; even had this been forged, still the indorsement was valid. The question then simply resolves itself into this point, can parties in any case be guilty of usury, by the contract of indorsement upon a genuine negotiable paper? The jury have found that the intention of the indorsement was to obtain exorbitant interest, on the part of the lender, and to evade the Statute against usury.
If Read and Gray had made their note to Campbell at ninety days, and sold it at a discount of four per cent per month, it would have been usurious. If the indorsement was making a new note, it was equally usurious. This, upon principle, seems to be sufficiently clear. But it is contended, that the Statute against usury has been differently construed. 13 Johns. 52; 15 Johns. 55; 17 Johns. 176, 181; and 3 Johns. Ca. 66, are referred to. The courts ■ of New York have certainly decided, that as between indorser and indorsee, the foregoing transaction would not have been deemed usurious in that State. We are told the English authorities are so likewise. This we find not to be the fact. The case of Parr v. Eleason, 1 East, 92, decided that an innocent indorsee could recover against the [394] acceptor of a bill, through an indorsement which was usurious; but it was admitted, that as between the indorsee and his immediate indorser at a discount, the contract would have been usurious. The question never arose directly in England until 1816, when it was presented in the King’s Bench in the cause of Lawes v. Mazzaredo, 1 Starkie Rep. 385, in a suit by the indorsee against the acceptor of a bill of exchange, sold at a dis *680 count. The indorsement was pronounced usurious and void, and the action defeated. The precise point also arose in North Carolina in the cause of Ruffin v. Armstrong, 2 Hawkes Rep. 411, where the indorsee sued the indorser of a note as in the present cause, the contract- of indorsement was pronounced usurious, and the action defeated. The cause was ably examined, and we think correctly decided. We would refer to the case of Lloyd v. Keach, 2 Con. Rep. 175, as presenting with much cogency the reasoning on the respective sides of the question. It must be left to the jury in every instance to ascertain the true intention of the parties and state of the transaction ; that a note may be sold at a discount is certainly true; but whenever the indorser or seller becomes bound for the whole amount by in effect giving a new note', this can be, and generally is, usurious. If in this instance the note had been indorsed by Fletcher, without recourse to him, then the transaction would have been free from exception. We are told, from the days of Queen Anne down, by every judge, that no shift shall be permitted to evade the Statute; yet the Supreme Court of New York hold that the simple contrivance of selling an insolvent note will authorize the making of a new and independent contract grossly usurious, when the original was not deemed worth a cent between the parties; and why? because it is contended in argument the original consideration given for the insolvent note must he taken as the consideration of the indorsement. Not so; the consideration for the indorsement is the money advanced to the indorser, who may be, and in practice generally is, the subject of usurious avarice to the most ruinous extent.
If excessive gain was not intended in this instance, why [395] require ample security in addition to the note of Talbot, for the whole amount secured by its face ? It would be mocking to say the parties intended otherwise than the jury have found ; the receipt of excessive interest (about forty per cent per annum) upon the money advanced Fletcher.
The difficulty in most of the cases has been, where the holder of the note or bill has sued the maker or acceptor, and the defendant has attempted to defeat the action on the ground that the plaintiff claimed through a void indorsement and had no title to sue. Such were Lloyd v. Keach, 2 Con. Rep. 175; Littell v. Hord, Hardin’s Rep. 81; Knights v. Putnam, 3 Pickering’s Rep. 184, the case in 1 East, 92, and some of the English nisiprius cases, and thus far the case of Lawes v. Mazzaredo really goes. Perhaps the rule laid down by the Supreme Court of Kentucky, Hardin, 81, is the true one as between indorsee and maker; that if the indorser does not complain, it does not lie in the maker’s mouth to set up the objection. This proceeds upon the ground that usurious contracts are not malum in se, but only voidable by the party injured or those claiming under him. So far as the indorsement operates as a transfer of the note, it is an executed contract which the Statute does not apply to; it only is applicable to the new *681 and collateral undertaking of the indorser to pay on the failure of the maker, which is an executory contract and may be avoided. The right of property and of action is passed by the indorsement; if this is made without liability on the part of the indorser, the transaction cannot be impeached for usury though the note was sold at ever so great a discount; the transfer of property in the note is immediate on its being indorsed and delivered; the collateral undertaking to pay on failure of the maker is yet to be executed, and a different matter, with which the maker of the note has no concern, and only avoidable at the election of the party thereto, the indorser.
We have been somewhat particular in stating reasons why the maker cannot defeat the action of the indorsee, because the Supreme Court of the United States, in the cause of Gaither v. The Farmers and Mechanics’ Bank of Georgetown, [896] 1 Peters’s Rep. 37, have decided the indorsement merely void, that it passed no interest, and that the indorsees could not recover from the maker if he obtained the assignment for a usorious consideration. In that case, the bank had purchased the note upon Gaither from Corcorran, paying therefor at about the rate of twenty per cent per annum under its value; the bank sued Gaither, he pleaded non assumpsit, and relied upon the fact that the assignment by Corcorran to the bank was vitiated with usury; the court below refused to sustain the defence; the Supreme Court reversed the decision, and declared the suit could not be sustained, because of the want of title in the bank.
This case, and that in Starkie, go further than there is any necessity for us to go, and further than we would if the necessity existed.
Judgment affirmed.
Note. — This case is very defectively reported, for it contains no sufficient statement of facts, nor how the questions discussed arose in the pleadings, nor what was the judgment below. The report, moreover, does not show who delivered the opinion of the Court. See Dews v. Eastham, 2 Y. 463, where this case is cited in note.